The next case today, number 231502 and 231503, United States v. Jonathan Kemuel Fargas-Reyes. Will attorney for appellant please come up and introduce yourself on the record to begin? Good morning. It may please the court, my name is Jackson Wetzel, assistant federal public defender on behalf of Mr. Fargas-Reyes. If I may, may I reserve two minutes for rebuttal? Yes. Mr. Fargas received a sentence that was procedurally and substantively flawed when the district court imposed two statutorily maximum sentences that were unsupported by the record, not sufficiently justified by the district court, and invited and even encouraged by a material breach on the part of the government. If I may, I would like to begin in addressing the conduct that was a material breach on the part of the government. This court must analyze whether a breach occurred, of course, in the totality of the record and the totality of the circumstances. So I do want to concentrate on some instances of governmental conduct that I think were the most obvious instances of breach that took place. And I will be making reference, just for clarity, I believe we had to file a corrected or amended brief where we make reference to the sentencing transcript at docket entry 116. So I am referring to docket entry 116 in the new criminal case, which was 22 CR 40. Why wasn't the transcript in the appendix that struck me as strange? Yeah, I'm... Did you not prepare that or are you just here to argue with that? No, I did not prepare that. I am just here to argue. Okay. I'm not exactly sure what happened. All right. I do know we filed a corrected and we made reference to the docket entry and I'm just trying to clarify. I'm going to make a lot of references to page numbers and that is the sentencing transcript that I am referencing.  I think the most obvious instances of breach occur at page 16 into 17 when the government is responding to the defense's third objection and then again at page 19 into 20 when the government is arguing for a sentence they think is appropriate. But of course, because this court has to analyze it in the totality of the circumstances, I'll be making reference to some things that happened earlier in the sentencing hearing as well at page 5 when the government responds to the first objection and then at page 8 when it responds to the second objection. So the third objection from defense counsel was specifically to, I believe he says the last paragraph in the PSR, but he's clearly referencing paragraph 101 of the PSR because they immediately start talking about amount of bullets. That objection is first lodged, I believe, around page 9. There is a back and forth between defense counsel and the district court in 9 to 16 and then the district court asks the government to respond at page 16. Very important in that response is that the government very quickly says, we agree with the court's assessment. And what is very important about that is in the back and forth between the court and defense counsel, between 9 and 16, I believe it's specifically at page 11, perhaps the bottom of 10 into the top of 11, the court says that it may vary upward, and that is very important. It may vary upward beyond the guideline range based on the amount of ammunition alone. So at page 16 when the government says, we agree with the court's assessment, it is endorsing a basis for an upward variance, not even a top of a guideline range or a guideline sentence, but an upward variance. And that is important because, again, at page 5, in response to the defense's first objection, which was about a two-level enhancement for a stolen firearm, the government says, we acknowledge an independent analysis by the probation office. It does mention that it wasn't contemplated by the plea agreement, and it says it sticks by the plea agreement, but it comes across as an endorsement of the PSR's guideline range. And again, in its response at page 8, I believe, to the second objection, which was about the criminal history category or the status points, it again says, we stand by the recommendation of the probation office and the PSR. We stand by criminal history category 4. So at this point, the government has endorsed the PSR guideline range, essentially, and the government has denied, explicitly, at page 6 and at page 8 into 9, those first two objections. So at page 16 into 17, when the government is specifically addressing the third objection, it is well aware at this point that it is dealing with the guideline range contemplated by the PSR, which is now 70 months to 87 months. And that is very important because the government agreed in the written plea agreement to recommend the sentence of 71 months. So in responding to this objection that is addressing a variance, it should be recommending something at the bottom of what the court understands the guideline range to be. Instead, it endorses the basis. Again, it points to the independent analysis that was done by the probation office, essentially endorsing the information in paragraph 101, which again was titled, A Basis for a Variance. Did the court solicit the government's opinion? Yes, the defense counsel ends his third objection and the government asks the government's position on that. Okay. And so, I mean, this whole issue about what the government can and cannot say, he said it's always intentioned, but we've also made clear that if the court requests a response from the government, the government has to be truthful. That is absolutely correct, Your Honor. And so why isn't the government simply being truthful here? Absolutely. I think, again, it is the cumulative effect in the totality of the circumstances. It is responding to the court's invitation to respond to the third objection. And this court has spoken of, I believe it refers to this tension you're talking about as the twin duties. Because if the government does have some contractual duties, they come with it through a plea agreement, and that can cause some tension if the court is trying to solicit some information, which may kind of go against that agreement, that written agreement and the plea agreement. Just real sort of quickly, bullet points, what's your best factual argument that the government here, in what it said, undermined the plea agreement? Again, if I could draw your attention to two distinct places. One, it is pages 16 to 17, where they are endorsing a variance. Again, we're not just speaking of a guideline range, but it is a variance. And then secondly, when they actually make their argument for an appropriate sentence. So after we're dealing with objections, it's the government's turn to argue for an appropriate sentence. And that's at pages 19 into 20. And they actually highlight some of the worst facts for the defendant. And again, the court has already accepted the plea agreement. I distinguish those two situations. So the first one, I think I understand where that's problematic, except for the fact that it seems like the court says a bunch of things, and there's not a really full-throated response by the government. It says something kind of quickly. And I understand how you're reading it. But I guess when the government puts forward the facts that aggravate, and there's a dispute between a 57-month and a 71-month, it strikes me that what the government is supposed to do is say, Judge, 71 months, because here's all the bad things. That's what an adversarial sentencing looks like when the parties are not standing before the court with an agreed-upon number. So why is that? I never understand the argument that that's a breach. I understand the first argument, but I actually don't understand the second. Well, again, it's in the context, because the court has accepted the PSR guidelines, which is 70 to 87. So now the government knows it's not recommending a top of a range, but a bottom of a range. Right, but another person is standing up and saying a variance. Variant down, and here are my mitigating reasons to put you very down to 57. And then, I shouldn't say I, because I've done this, but the prosecutor stands up and then says, Well, Judge, no, you shouldn't give a variance. Here are the bad facts that make the guideline range, which is only presumptively reasonable, the right sentence. Here they are, Judge, imposed 71 months. Why is that a problem? Because in this situation, in this particular situation, it's going above and beyond that. It knows at this point it should be recommending a bottom of the guideline range for the PSR, and it accents just the bad facts. And we think that brings it very similarly in line with the U.S. v. Davis case out of the Third Circuit, which we cited in our 28J letter. Because in that case, the government had... So play it out. What should the government say when it stands up after the mitigators have been laid out there to propose the 57? Now, the prosecutor has to stand up, and the prosecutor should say what? I'm not sure it's necessarily our place to say what the government has to say, but certainly at that point... What would be okay for the government to say in your mind that's not a breach? Well, it's already opposed all the objections, and it's gotten the rulings it wanted. It knows there's a higher guideline range. The government could have stayed silent and simply... And you think it has to, or otherwise it's a breach? In this situation, with what the government did, and the cumulative effect from all four instances, the three objection responses, and then its own argument, that cumulative effect definitely was a breach in this instance. Can I ask you a quick question? So I understand the... In terms of the firearm enhancement, I understand that information that the firearm was stolen came a little bit, at least in your view, very late in the game. But when I look at the objections before the trial court, it seems to me it's that your client had no knowledge that the firearm was stolen, not as to the reliability of whether of that information that it was stolen. Yes. So I think our strongest argument there is the reliability of it. I think it is too, but I mean, I think it could be. I think... But I don't think... I didn't... I was sort of struggling to see that that was the argument that was made. So it's our position that defense counsel at the trial level did preserve that through his written objections. I believe it comes across at page 29 into 30 of the sealed supplemental appendix. It says, we want to be clear. Our argument is there's not sufficient, or I'm paraphrasing, but there's not sufficiently reliable information in the record to enhance us. That kind of mixed with his omnibus, where we're reincorporating all of our PSR objections, which was at page 33 of the sentencing transcript, we think that sufficiently preserved that issue. So, and that is our argument that we briefed a lot. It's the reliability is the problem with those types of databases, and that's why it wasn't sufficient to go up. Okay. And before us, are you also arguing that he had no knowledge and that that matters for the enhancement? Or it seems like you're focusing your main argument on that. We are focusing our main argument on the reliability of it. And I say I've ceded my time if there's no further questions. Thank you. Thank you, counsel. We'll attorney for Apley. Please introduce yourself on the record to begin. Good afternoon. I'm Ethan Sachs from the Department of Justice on behalf of the United States. Thank you. Just because we're still, we just finished with this.  The defense argues on Bryant to say that the information regarding the fire enhancement was unreliable. Would you distinguish Bryant? Sure. Bryant, as we understand it, is a career offender enhancement. It's the unique context of the career offender enhancement because there are two Supreme Court cases that address that area. I believe it's Taylor is the earlier one. Actually, Bryant says we're not going to go so far as to say we're going to adopt the rule that the defendant wanted from, read from those Supreme Court cases. But I think it's clear that the rule in Bryant, to the extent it is a rule, applies only in the career offender enhancement context. Well, should we pay attention to the skepticism that court had to these types of databases? I understand the point. One thing is I think that would bring this court into some serious tension with how other courts have addressed the issue. We cite in our brief the Third Circuit case and the Ninth Circuit case. But what is a defendant supposed to do? So NCIC says this thing. I don't know where it comes from. I don't know anything about it. And now it's going to raise my guideline level two points. That does seem, I mean, I guess I've dealt enough with NCIC to know it has a lot of mistakes in it. And so it strikes me that that's a pretty scant, it's a good lead, but by itself, it seems like a scant basis to raise someone's sentence. So in direct response to that, Your Honor, I think this court in Gonzales dealt with a very similar situation. And the site for that is 857F3rd46. And it creates what we understand to be a test, which is usually, because it's in the PSR, this is a finding in the PSR, albeit one from NCIC, but in the PSR, the court is permitted to rely on that finding. For that not to be the case, the defense has to do two things. It has to object, which we've discussed this morning with my colleague. We don't think the defense objected on this ground here. And beyond that, it has to provide some countervailing proof. The defense has to do that. And again, I think, excuse me, the defense brief suggests... Before you move off to that point, the defense in this brief says that it doesn't have access to that database. And so it doesn't get noticed that there's an enhancement until it gets to PSR. That's correct. Two things for that. So how would a defendant even go about rebutting what the information in the NCIC is? Right. So I think the question is actually not just rebutting just what the NCIC says, because that is something it doesn't have access to. And we're not disputing that fact. But the point is, this is an enhancement that the gun was a stolen firearm. And the reply brief says something to the extent of, well, how could we possibly rebut that finding? But it's his gun. So, you know, respectfully, there are, I think, many ways in which someone who has a gun could at least put forward some countervailing proof. Maybe not prove beyond a reasonable doubt. Maybe it would have to be hashed out with some further argument or discussion with the district court judge. But we're talking here really the threshold question of some countervailing proof. And so I'm just speculating here, but maybe where they actually put the gun from or what they know about the gun. I'm not saying they have to have every detail to counteract everything in the NCIC. That would be too hard of a burden at this stage. But the burden is on the government to come forth with reliable information. And if there's some inherent unreliability in this database, why should we trust the burden on the defendant at that point? Well, to be clear, I'm not conceding that there is inherent reliability. But even if there were, I think that highlights why it's so important for the defendant at the moment to object. Because these things really need to be fleshed out. Assuming that what counsel just read we deem to be a sufficient objection. Sure. Because he says that it's not reliable. I mean, that's an objection. And I will accept that, but I just would want to point out to clarify the context of that statement. I would urge your honors to actually read it. We don't think it's nearly as clear as what the defense counsel represented today. But then you could look at what the probation responds to the written objections. It's only the mens rea knowledge issue, the rehave issue. And you can look at what's actually said at the sentencing hearing. I can quote for you, this is Fargus' counsel. My objection is predicated on the fact that my client was unaware that the gun was stolen and then he mentions rehave. And then the district court itself only talks about the mens rea issue and overruling the objection. So I think it would be quite a leap to say that actually there was an objection. But I will take your honors question hypothetical that even if there were an objection at the moment, Again, I think that it's hard to say because it didn't play out. But I think the government would be entitled to put forward why it believes NCIC is, in this instance, reliable. And it could go beyond just NCIC. Does the database have information as to who the gun was allegedly stolen from? I am not 100% certain on this answer. But I believe what happens is when the gun is reported stolen, when someone makes a report, and I believe that's included in the NCIC, but I'm not 100% certain. Is that included in the information given to the defendant? I don't believe so. He just gets a PSR that says there's been an NCIC finding that this gun has been stolen. Correct. Plus two points. So far, as I know, that's all the government gets, too. This is coming in at the... But it's not all the government has access to. That's correct. I understand that. But it's not as if the defense has no access to anything else. It may be limited. I acknowledge more than the government is in accessing NCIC. I can't really dispute that. But what I can point is that that's not the only fact of the matter here. The NCIC, in effect, is a notation that someone reported this gun stolen. And I understand that going years in the past can be difficult for someone to do to prove that this gun was or was not, in fact, stolen. But again, that's not what the law requires the defendant to do. The point is the district court can rely... I want to figure out what the law requires the government to do. If the law requires the government to come forth with reliable information and there's either some inherent unreliability about NCIC information or the government is in possession of more specific information that would make that notation reliable, I'm not understanding why before that happens we need to shift the burden to the defendant. If I understand Your Honor's question, I just think my answer is that's how we read Gonzalez. I think Gonzalez dealt specifically with the same enhancement, a stolen firearm enhancement. And it was, you know, I think the court there was well aware and established this precedent and this standard to control the test. So I think it would really be overruling what this court has already said should be the controlling test in those circumstances. You know, the other issue is, as we've sort of... to the plea breach allegations, unless Your Honor has any further questions. So it would be enough. I mean, the defendant might say, I didn't steal that gun and I bought it from my brother. And so, okay, it's lineage. Apparently there's some unknown lineage of this gun if we go back far enough where someone said it was stolen. I mean, is that good enough? As I take Your Honor's point, I think what Gonzalez uses is the word countervailing proof. And just to be clear, that's the same language that the Third Circuit in Gray and the Ninth Circuit in Parler use, countervailing proof. So I think the question is what Your Honor gave forth there, is that proof? I mean, I think at some point we get into a fine line of distinguishing between what's party argument or representation and what's proof. But yeah, I think something minimal would certainly be a harder place for us than nothing at all. We're not trying to create some huge burden. Or I didn't know it was stolen. I'm sorry? Or I didn't know it was stolen, which is what we have here. Well, I don't think I didn't know it was stolen really as proof. I think that's more on the party argument line. But I take the point that there is some hypothetical facts where that could be a hard line to draw. We just don't think it's this case. I mean, so the defendant has to say, not that I got it from my brother. The defendant has to say, I got it from my dead brother so that there can be no further inquiry. Your Honor, I take the point, Your Honor. But I actually don't think it's that much to ask the defendant if, in fact, the gun is not stolen to put forward anything, any countervailing proof. That's really the standard as we reconcile is any countervailing proof. And there just isn't anything here it said at all. And we think that's largely because. But that's because you're discarding, I didn't know it was stolen as not being countervailing proof. Well, respectfully, Your Honor, I'm not trying to discard that. I think the best interpretation of I didn't know that was stolen is argument. I mean, well, no. I mean, he could have fleshed that out more. But that means I got it in a way that did not indicate to me it was stolen. If he said it in more words, then that's a fact he's asserting. And he could have said more. But that's what he said, which, I mean, it tells us really nothing about the lineage of this gun. Because that could go back a long, long time as guns change hands. But that's the problem. What is it that, you know, I mean, that's not much different than my brother hypothetical, than I bought it from my brother hypothetical. And yet, what do we expect when there's no information available to the defendant? Again, Your Honor, respectfully, I'd push back. I don't think it's fair to say that there's no information available to the defendant. There may not be the specific information. Did you provide the NCIC handout, the printout that provides all of the information that is on NCIC so that they could make some inquiry? I don't believe that happened here. The information the defense has, I think, is a sentence in the PSR that says the gun is stolen. That's it, right? There's nothing else. The government didn't offer any evidence. I believe that's all the defendant had in this case. And again, this came in through probation here in the PSR. This is not something that the parties, if there's any evidence, discussed or, you know, were really had butting heads about. This is late breaking to the government, too, if you will. And we acknowledge, I'm not trying to stand up here and say we have no more access to NCIC than a defendant does. That's not the point I'm trying to make. But if I could just finish this point, Your Honor. It's that we are also starting at a late point. And all we're asking is for any countervailing proof. And I understand there's some line, but I think the two prongs from Gonzales, the countervailing proof and the objections, really go hand in hand. I mean, there's a theoretical case, maybe, where they're distinct. But I think the point is the district court just wasn't put on notice to flesh this out, to try to get to the bottom of it. And the way the, you know, sentencing hearings work, if there's no objection and no countervailing proof, it's just sort of the standard course that the court can rely on findings within the PSR. I think this court has said that over and over again. I see my time is up, so unless Your Honor has any further questions. Thanks. Thank you, Attorney Wetzel. Please reintroduce yourself on the record. You have a two-minute rebuttal. Yes, AFPD, Jackson Wetzel, on behalf of Mr. Fargus, and Ms. Reyes, I would like to begin my rebuttal by correcting myself. I believe I said the defense counsel at the sealed supplemental appendix had preserved the objection. It's actually at the appendix at 58. At the top of that page, it says, as Mr. Fargus has positioned, that the evidence on record cannot support the application of the specific offense characteristic of a stolen firearm. And so it was the sealed supplemental appendix at 29 into 30, I believe, is the probation officer's response. And it is just two statements that say a report says it was stolen. There is no other information available from the probation officer, and that report, the NCIC report, itself was not produced. So there was no additional information that the defendant really could bring to the attention of the district court at that time. There was no even mention of the jurisdiction or the district or the person who reported the firearm stolen. No date of the firearm being stolen. In many of the courts that talk about... I've never seen defense do this, but do they have some ability to get sort of discovery from probation on the underlying documents that support the PSR? In my experience, defense has no access to a NCIC report. So I don't believe there's anything a defendant can do other than perhaps having a conversation with a prosecutor who's nice enough to show it to them. I don't think there's anything a defendant can do to get the information in the report. So it's almost our position that... Is there anything that prevents probation from... I mean, because probation is the one who accessed the database. So is there anything that would prevent you from asking probation from giving you more information? No, there's nothing that would prevent us from doing so. But is there anything that requires probation to give it to you? They're supposed to... It's our position that a defendant should have access to information upon which his sentence would be enhanced. Yes, and in this case, the defendant did not have access to it. And I am over time unless there's further questions. Thank you very much. Thank you, counsel. That concludes arguments in this...